UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MELISSA C. BUTTERWORTH,

          Plaintiff,

vs.                                       Case No.  3:08-cv-411-J-34JRK

LABORATORY CORPORATION OF
AMERICA HOLDINGS,

          Defendant.
_____/

## **ORDER**

This cause is before the Court on Plaintiff's Motion to Compel Discovery (Doc. No. 280; "Motion to Compel Discovery"), filed May 12, 2010, which was supplemented with a Notice of Filing Supplemental Evidence in Support of Plaintiff's Motion to Compel (Doc. No. 306; "Notice of Supplemental Evidence"), filed May 28, 2010; and Defendant Laboratory Corporation of America, Inc.'s Motion for a Protective Order Regarding Inadvertently Disclosed Privileged Materials and Supporting Memorandum (Doc. No. 165; "Motion for Protective Order"), filed October 23, 2009. Both Motions are opposed. See Defendant's Response in Opposition to Plaintiff's Motion to Compel Discovery (Doc. No. 300; "Defendant's Opposition"), filed May 21, 2010; and Plaintiff's Response in Opposition to Defendant's Third Motion for a Protective Order (Doc. No. 185; "Plaintiff's Opposition"), filed November 6, 2009.  In connection with the instant Motions, on May 12, 2010, Defendant submitted in camera and ex parte certain documents for the Court's review.  See Doc. No. S-9.

**I.  Relevant Background**

This action commenced on April 24, 2008, when Plaintiff filed a Complaint against Laboratory Corporation of America Holdings ("Labcorp" or "Defendant"), her former employer, alleging Defendant engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and the Civil Rights Act of 1991; the Florida Civil Rights Act of 1992, Fla. Stat. § 760.01 et seq.; the Florida Whistle-Blower's Act, Fla. Stat. § 448.101 et seq., as well as breach of contract, quantum meruit, and unjust enrichment.  See Complaint (Doc. No. 1) at 1 ¶ 1.  Plaintiff asserts in part that Defendant unlawfully engaged in sex discrimination with respect to her employment, id. at 10-13, and that Defendant retaliated against Plaintiff when she attempted to engage in statutorily protected activity.  Id. at 13-16.  Defendant responds, inter alia, that "Defendant's actions with respect to [terminating] Plaintiff['s employment] were predicated upon grounds other than, and would have been taken absent, Plaintiff's gender or exercise of any alleged protected rights."  Amended Answer (Doc. No. 82) at 21 ¶ 9.  Through the multitude of discovery matters the Court has been presented with, it has become apparent that Defendant intends to rely on Plaintiff's alleged participation in a internet website called "Realtors to the Stars" ("RTS website"), in which Plaintiff and other LabCorp employees were supposedly advertising realtor services, to justify its actions with respect to Plaintiff's employment.  Defendant alleges Plaintiff's involvement in the website constituted a conflict of interest, in violation of the company's policies with respect to outside activities and/or employment.

On May 6, 2010, the Court held a hearing on Defendant's Motion for Protective Order.[1] See Minute Entry (Doc. No. 277). That motion, as discussed infra at Part II.B., narrowly focuses on two inadvertently disclosed privileged e-mails and their attachments. During the hearing, it became evident that Plaintiff's counsel was under the mistaken impression that (1) other privileged e-mails and documents were at issue, and (2) Defendant's counsel had submitted the other privileged e-mails and documents from its privilege log in camera for the Court's review. Accordingly, Plaintiff's arguments were focused on the e-mails and documents contained in Defendant's privilege log, which are not the subject of the Motion for Protective Order. At the conclusion of the hearing, the Court took the Motion for Protective Order under advisement and directed the following: Plaintiff to file a motion identifying relief sought with respect to the privilege log documents by May 12, 2010; Defendant to file, in camera and ex parte, the e-mail correspondence and its attachments which are the subject of the Motion for Protective Order, as well as e-mails and documents from its privilege log, by May 12, 2010; and Defendant to respond to the anticipated motion by Plaintiff by May 21, 2010. See Order (Doc. No. 278). A status hearing was set for May 26, 2010. See id.

On May 11, 2010, all necessary documents were submitted by Defendant in camera and ex parte. See Doc. No. S-9. Plaintiff also filed the Motion to Compel Discovery, to which Defendant responded in opposition. See Defendant's Opposition. On May 26, 2010, the status hearing was held, during which oral argument was heard regarding the Motion to

---

[1] The Parties had previously advised the Court that they were attempting to resolve the issues raised in the Motion for Protective Order; accordingly, the Motion was held in abeyance pending further advisement from the parties. On March 17, 2010 Plaintiff filed a Request for Oral Argument (Doc. No. 240), and oral argument was set for May 6, 2010. See Notice of Hearing (Doc. No. 246).

Compel Discovery. <u>See</u> Minute Entry (Doc. No. 304); Transcript (Doc. No. 311; "Tr."). At the conclusion of the May 26, 2010 hearing, Plaintiff's Motion to Compel Discovery and Defendant's Motion for Protective Order remained under advisement.

## II. Motions/ Issues Raised[2]

### A. Plaintiff's Motion to Compel Discovery

In Plaintiff's Motion to Compel Discovery, Plaintiff moves the Court for an Order compelling Defendant "to produce communications previously withheld due to LabCorp's claim of attorney client and/or work product protection[.]" Motion to Compel Discovery at 1; <u>see also</u> <u>id.</u> at 23. Plaintiff further "requests that the Court reopen discovery for the limited purpose of allowing Plaintiff to depose [in-house counsel] Drew Chakeres, [human resources director] Kate Sumsion and [supervisor] Terry Farrell[[3]] on the information previously withheld." <u>Id.</u> at 24. Plaintiff contends the attorney-client privilege and the work-product protection claimed by Defendant are eviscerated by (1) two of Defendant's affirmative defenses; by (2) Terry Farrell's deposition testimony; and by (3) "a very limited amount of emails [produced by Defendant] that include references to Farrell seeking and relying on [in-house counsel] Chakeres' advice prior to making the termination decision." <u>Id.</u> at 4-10.

As to the first contention, Plaintiff argues Defendant "squarely placed at issue in this case the facts and advice LabCorp received from its counsel with respect to its decision to terminate the Plaintiff's employment" by pleading two affirmative defenses: (1) "'[a]ll actions

---

[2]   For ease of discussion, the Motion to Compel Discovery is discussed first, followed by the Motion for Protective Order.

[3]   Mr. Farrell was Plaintiff's boss and ultimately decided to fire her for allegedly violating Defendant's conflict-of-interest policy. Motion to Compel at 2-4.

taken by LabCorp with respect to Plaintiff were lawfully made and were in good faith and not malicious, wanton, or willful'"; and (2) "'actions taken by Defendant with respect to the subject matters alleged in her complaint were undertaken reasonably in good faith and constitute lawful, proper, and justified.'" Id. at 4 (quoting Affirmative Defense in Original Answer (Doc. No. 5) at 19 ¶ 5, 20 ¶ 12; Affirmative Defense in Amended Answer (Doc. No. 82) at 21¶ 5, 22 ¶ 12). Plaintiff essentially equates the terms "good faith" and "lawful" to a "reliance on advice of counsel" defense. Plaintiff argues the above two affirmative defenses result in a waiver of the attorney-client privilege because counsel's advice is "at issue in the litigation." Motion to Compel Testimony at 11 (quotation and citation omitted).

As to the second contention, Plaintiff claims Defendant waived the attorney-client privilege and work-product protection because Mr. Farrell referred to assistance from Defendant's in-house counsel during his deposition. Id. at 4-5. Specifically, Plaintiff alleges Mr. Farrell testified he did not perform the investigation into Plaintiff's alleged misconduct prior to firing her; in-house counsel did. Id. According to Plaintiff, Mr. Farrell "relied on [in-house counsel's] investigatory findings and [counsel's] opinions" in concluding Plaintiff violated the company's conflict-of-interest policy, discipline was an appropriate remedy for the violation, and Plaintiff should be terminated. Id. at 5.

As to the third contention, Plaintiff argues the attorney-client privilege was intentionally waived because Defendant disclosed a "very limited amount of emails that include references to Farrell seeking and relying on [in-house counsel's] advice prior to making the termination decision." Id. at 6. Most of the e-mails concern Plaintiff's alleged involvement in the RTS website in which Plaintiff was purportedly advertising real estate

services ("disclosed RTS e-mails"). Id. at 6-10. Plaintiff contends that Farrell's deposition testimony and the disclosed RTS e-mails are being used to bolster or support Defendant's two "good faith" based affirmative defenses. Id. at 17-20.

In response, Defendant argues that the Motion to Compel Discovery should be denied because it is untimely, and alternatively should be denied because Defendant has not waived the attorney-client privilege or the work-product protection. Defendant's Opposition at 1, 3-17. As to the untimeliness argument, Defendant points out that the Motion was filed almost two months after the discovery deadline, and Plaintiff has not shown good cause for its untimeliness. Id. at 5-8. As to the attorney-client privilege and work-product protection, Defendant contends that although it did use the words "good faith" in two of its affirmative defenses, it did not assert and does not intend to assert or rely on advice of counsel to support its claim of good faith. Id. at 8. To the contrary, says Defendant, "LabCorp intends to provide evidence of, *inter alia*, the non-discriminatory factors for Plaintiff's termination and the anti-discrimination and open door policies in place at LabCorp." Id. at 10. Defendant indicates it has "no intent to rely on Farrell's deposition testimony (to the extent it references conversations with [in-house counsel]) to establish its good faith defenses."[4] Id. at 13. As to the disclosed RTS e-mails, Defendant contends it "simply responded to a discovery request" by Plaintiff in producing such e-mails, "not in any attempt 'to bolster LabCorp's defense.'" Id. at 13. Defendant further contends Plaintiff mischaracterizes the disclosed RTS e-mails as privileged. Id.

---

[4] Defendant also points out that Plaintiff, not Defendant, asked Mr. Farrell "targeted questions concerning Mr. Farrell's decision to terminate Plaintiff . . . [and] now attempts to controvert the testimony that she specifically elicited to suggest that LabCorp intends to rely on Mr. Farrell's testimony to establish a reliance on the advice of counsel defense." Defendant's Opposition at 13.

### B. Defendant's Motion for Protective Order

In Defendant's Motion for Protective Order, Defendant cites Rule 26(b)(5)(B) of the Federal Rules of Civil Procedure and Rule 502(b) of the Federal Rules of Evidence in support of its request that Plaintiff immediately return two inadvertently disclosed privileged e-mails and their attachments, numbered LAB-BN-000293-000301 (collectively, "inadvertently disclosed e-mails"),[5] Motion for Protective Order at 1, which have been submitted to the Court for in camera review. Defendant further asks that Plaintiff "provide written assurance to LabCorp that counsel for Plaintiff has not disclosed the Documents or the contents of the Documents to anyone and will not do so," and for the Court to direct Plaintiff to "destroy all notes or other work product, including computer files, containing any information reflecting the contents of the Documents[.]" Id. at 1-2. Finally, Defendant requests that the Court "[p]rohibit counsel for Plaintiff from disclosing or otherwise using any information obtained from the Documents[.]" Id. at 2.

Defendant asserts that reasonable steps were taken to prevent disclosure, and subsequent to the inadvertent disclosure, reasonable steps were taken to rectify the error. Id. at 2-4. Therefore, argues Defendant, the disclosure does not constitute a waiver of the attorney-client privilege and the inadvertently disclosed e-mails should be returned. Id. at 9-15.

In response, Plaintiff agrees that the disclosure was inadvertent but contends the attorney-client privilege has been waived for essentially the same reasons set forth in the

---

[5] The inadvertently disclosed e-mails are described by Defendant as "one document consisting of a string of two (2) e-mails with the same four (4) attachments to each e-mail[.]" Motion for Protective Order at 1.

Motion to Compel, see generally Plaintiff's Opposition, with the added reason that Defendant has taken "contradictory positions" with regard to the steps taken to terminate Plaintiff. Id. at 4-10. According to Plaintiff, these "contradictory positions," "coupled with LabCorp's affirmative defenses of good faith and lawfulness," make "the facts surrounding LabCorp's discovery of the website [] at issue" and make "the facts surrounding LabCorp's decision to terminate Plaintiff's employment [] at issue." Id. at 4, 5, 6, 8, 9, 10.

### III.  Discussion

#### A.  Plaintiff's Motion to Compel Discovery

##### 1.  Timeliness of Plaintiff's Motion

Defendant asserts that Plaintiff's Motion to Compel Discovery is untimely because it was filed almost two months after the close of the discovery period. Defendant's Opposition at 3. Plaintiff does not address the issue of timeliness in her Motion, because the Motion was essentially invited by the Court, see Order (Doc. No. 278), and because the parties had been trying to resolve the issues related to the privileged documents between themselves after the close of the discovery period. Plaintiff did, however, address the timeliness issue at the May 26, 2010 hearing. Tr. at 8-14.

The Court excuses Plaintiff's alleged untimely filing of the Motion to Compel Discovery for two main reasons: (1) the confusion that existed on Plaintiff's counsel's part regarding whether certain privileged documents were submitted to the Court for in camera review; and (2) the parties' efforts to resolve their discovery disputes without the Court's assistance. See Allianz Ins. Co. v. Surface Specialties, Inc., No. Civ. A. 03-2470-CM-DJW, 2005 WL 44534, at *1 (D. Kan. Jan. 7, 2005) (unpublished) (recognizing the defendant's

motion to compel discovery was filed sixteen days late due to the parties' mutual efforts to resolve a discovery dispute that continued after a thirty-day period to file a timely motion to compel, but finding that due to the parties' efforts to resolve the discovery dispute, the defendant was justified in the untimely filing). Accordingly, the undersigned proceeds to the merits of the Motion.

### 2. Waiver of the Attorney-Client Privilege and/or Work-Product Protection

Plaintiff asserts Defendant waived its attorney-client privilege and work-product protection in three ways: (1) expressly, by pleading two advice of counsel affirmative defenses; (2) impliedly, by pleading the advice of counsel affirmative defenses and relying on Mr. Farrell's testimony and the disclosed RTS e-mails; and/or (3) intentionally, by producing the RTS e-mails. Motion to Compel at 11-20.

In general, a communication is within the scope of the attorney-client privilege if the "'communication was made to [the attorney] confidentially, in his professional capacity, for the purpose of securing legal advice or assistance.'" United States v. Schaltenbrand, 930 F.2d 1554, 1562 (11th Cir. 1991) (quoting United States v. Ponder, 475 F.2d 37, 39 (5th Cir. 1973)).[6] If a communication would normally be deemed privileged, "[t]he great weight of authority holds that the attorney-client privilege is waived when a litigant places information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information *would be manifestly unfair* to the

---

[6] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the former United States Court of Appeals for the Fifth Circuit that were rendered prior to the close of business on September 30, 1981.

opposing party." Cox v. Adm'r U.S. Steel and Carnegie, 17 F.3d 1386, 1417 (11th Cir. 1994) (emphasis in original) (quoting Conkling v. Turner, 883 F.2d 431, 434 (5th Cir. 1989)). Courts have also found "waiver by implication" "when a client testifies concerning portions of the attorney-client communication," "when a client places the attorney-client relationship directly at issue," or "when a client [relies] on an attorney's advice as an element of a claim or defense." Cox, 17 F.3d at 1418 (quotation omitted). Furthermore, with respect to waiving the attorney-client privilege, such a wavier may extend to fact work product communicated to the client. See In re EchoStar Comms. Corp., 448 F.3d 1294, 1302 (D.C. Cir. 2006); United States v. Bachynsky, No. 04-20250-CR, 2007 WL 1521499, at *3 (S.D. Fla. May 22, 2007) (unpublished); Outside the Box Innovations, LLC v. Travel Caddy, Inc., 455 F. Supp. 2d 1374, 1378 (N.D. Ga. 2006).

In Henry v. Quicken Loans, Inc., 263 F.R.D. 458 (E.D. Mich. 2008), a case on which Plaintiff relies, the court was presented with somewhat similar issues to the ones presented in this case involving alleged express and implied waivers of the attorney-client privilege. Henry was a Fair Labor Standards Act ("FLSA") overtime collection action involving multiple plaintiffs who worked for the defendant. Id. at 459. The plaintiffs claimed they were not appropriately paid their overtime wages and sued the defendant to recover "unpaid back wages at the applicable overtime rate," as well as liquidated damages in an equal amount. Id. The defendant filed a motion for summary judgment, claiming it acted in "good faith" and with a "lack of willfulness[.]" Id. at 462. The defendant relied on (1) a declaration and (2) deposition testimony, both of David Carroll, an attorney whose responsibility was "to analyze and work through issues that have a legal component." Id. (quotation omitted). After being

assigned the task of determining whether the employees at issue were required to receive overtime pay, Mr. Carroll concluded that the employees met "the FLSA's administrative exception, and therefore did not have to be paid overtime compensation." Id. According to his declaration, Mr. Carroll "reached his determination based in part on ongoing consultation with the Company's legal and HR departments." Id. (quotation omitted). The plaintiffs filed a motion to compel, arguing the defendant "waived the attorney client privilege with respect to issues regarding the decision to classify [the employees] as exempt under the FLSA by asserting a defense of good faith and by submitting the declaration of Mr. Carroll, who is a lawyer by training, and had elsewhere been identified as a member of [the defendant's] legal team." Id.

The Magistrate Judge rejected the plaintiffs' argument that the defendant had waived the attorney client privilege in asserting an affirmative defense of good faith and non-willfulness. Id. at 463. In doing so, the Magistrate Judge found that "mere assertion of a defense of good faith, as opposed to a defense of good faith reliance on the opinion of counsel, does not waive the privilege as to communications with counsel." Id. Likewise, the Magistrate Judge determined that as to communications between Mr. Carroll and outside counsel, "mere assertions in Mr. Carroll's declaration of his ongoing consultations with the Company's legal and HR departments did not, on their own, cross the line into waiver," but "approached" such a waiver. Id. (quotation omitted).

Despite concluding that the above two grounds argued by the plaintiffs did not constitute a waiver of the attorney-client privilege, the Magistrate Judge found that a limited waiver did in fact occur when the defendant took "an additional step in its briefing[.]" Id. In

-11-

what amounted to the critical "additional step," the defendant in its motion for summary judgment cited to Mr. Carroll's deposition testimony regarding consultation with the legal and HR departments, then "argu[ed] in its motion that when Mr. Carroll determined the exempt status of the [employees], he confirmed his understanding of these sources with in-house and outside legal counsel." Id. (quotation omitted). Indeed, the Magistrate Judge noted that the defendant "revealed by direct implication the *content* of those communications." Id. at 464 (quotation omitted) (emphasis in original). "By doing so . . . [the defendant] made the decision and took the affirmative step to make the content of privileged communications a basis of its defense and thereby waived the privilege as to such communications." Id. Accordingly, the motion to compel was granted. Id. at 463.

The District Judge ultimately affirmed the Magistrate Judge's findings. Id. at 463-471. The District Judge observed that "[b]y including consultations with counsel as a basis for its good faith, [the defendant] has transformed the defense of good faith into a 'good faith reliance on counsel' defense." Id. at 470. The defendant "chose to inject the advice of its counsel into this litigation by relying on it to reinforce its motion for summary judgment, and therefore it should not be a surprise to find that the privilege has been waived." Id. (citation omitted).

Here, applying the rationale in Henry, there is no automatic waiver of the attorney-client privilege (or work-product protection, to the extent it applies) by Defendant asserting two "good faith" affirmative defenses, which include the assertion that Defendant's actions were lawful. See Henry, 263 F.R.D. at 464, 466. According to Defendant, these are

standard defenses in Title VII cases to avoid punitive damages.[7]  Defendant's Opposition at 9.  Contrary to Plaintiff's argument, see Tr. at 20, Defendant's contention that its actions were made in "good faith" and were "lawful" does not transform this case into one in which advice of counsel is at issue.  Rather, the Court construes the reference to "lawful" as referring to the requirements imposed by Title VII and Defendant's efforts to comply with it.  Furthermore, Defendant clarified at the hearing that both affirmative defenses are "in response to the claim for punitive damages."  Tr. at 34.

Furthermore, unlike in Henry, Defendant here has not impliedly waive the attorney-client privilege (or work-product protection, to the extent it applies) by inserting as an issue in the litigation reliance on advice of counsel.  See Henry, 263 F.R.D. at 466-67, 470.  It is true that when asked certain questions by Plaintiff's counsel, Mr. Farrell referenced during his deposition that he consulted with in-house counsel.  However, Defendant has not relied on, and does not intend to rely on, Mr. Farrell's deposition testimony referencing his conversations with in-house counsel to prove Defendant acted in good faith in its compliance with Title VII.  See Defendant's Opposition at 13; Tr. at 46-47; cf. Williams v. Sprint/United Mgmt. Co., 464 F. Supp. 2d 1100, 1103, 1114-16 (D. Kan. 2006) (holding "no waiver" occurred when "testimony concerning reliance on counsel was elicited by plaintiffs'

---

[7]  In Kolstad v. Am. Dental Ass'n, 527 U.S. 526 (1999), the Supreme Court explained that for a plaintiff to receive punitive damages for a Title VII violation under 42 U.S.C 1981 a(b)(1), an employer must discriminate or act with "malice or reckless indifference to the federally protected rights of an aggrieved individual."  Id. at 534 (emphasis omitted) (citing 42 U.S.C. § 1981a(b)(1)).  The Court stated that when "an employer has undertaken [] good faith efforts at Title VII compliance, it 'demonstrates that it never acted in reckless disregard of federally protected rights.'" Id. at 544 (citations omitted).  Defendant contends that "[i]n light of the *Kolstad* decision, to effectively defend against a claim of punitive damages in a Title VII action, employers must demonstrate that they acted without malice or reckless indifference and that they undertook good faith efforts to comply with Title VII."  Defendant's Opposition at 10.  According to Defendant, its defenses are "in response to Plaintiff's claims for punitive damages."  Id.

-13-

counsel in response to pointed questions from plaintiffs' counsel"; as such, "the testimony . . . does not indicate that defendant intends to use advice of counsel to justify any conduct on its part") (citing Motley v. Marathon Oil Co., 71 F.3d 1547, 1552 (10th Cir. 1995) and distinguishing In re Broadcom Corp. Sec. Litig., Nos. SA CV 01275GLTMLGX, SACV02301GLTANX, 2005 WL 1403516 (C.D. Cal. Feb. 10, 2005) (unpublished) and Cox, 17 F.3d at 1419). In other words, Defendant's assertion of good faith in its affirmative defense is separate and apart from the advice it received from counsel.

Plaintiff's counsel argued at the hearing that the questioning by Plaintiff's counsel at Mr. Farrell's deposition was not designed to elicit attorney-client privileged information; rather, the questions were "basic questions that any counsel would have asked this key witness who made the decision to terminate." Tr. at 14-15. The Court agrees the intent of the questions was not necessarily to elicit privileged information. However, as a result of the questions asked by counsel, Mr. Farrell was obligated to explain the circumstances surrounding his decision to terminate, and he did so without revealing the substance of his communications with counsel. That Mr. Farrell testified he consulted with counsel, without more, does not serve as a basis for waiving the attorney-client privilege. See Williams, 464 F. Supp. 2d at 1114-16. Furthermore, although Mr. Farrell stated he did not conduct the investigation into the RTS website but instead counsel did, Mr. Farrell's deposition testimony, when read in its entirety, leads to the conclusion that counsel essentially provided him with printouts of the website (which could be easily obtained by anyone, including the general public) and with the company's conflict-of-interest policy. Such actions do not put advice of counsel "at issue" in the litigation.

Lastly, Defendant did not impliedly or intentionally waive any attorney-client privilege or work-product protection by disclosing to Plaintiff the RTS e-mails. This information produced by Defendant in response to Plaintiff's request for production was outside the scope of privileged materials because the e-mails were not confidential communications made to in-house counsel for the purpose of securing legal advice. The e-mails simply and broadly state that employees of Defendant had consulted or were planning to consult the legal department; they do not disclose the substance of such consultations. Therefore, the production of the non-privileged RTS website e-mails does not constitute a waiver of the attorney-client privilege (or work-product protection, to the extent it applies) with respect to the documents and e-mails at issue on Defendant's privilege log.

In accordance with the foregoing, the Motion to Compel Discovery is due to be denied.[8]

### B.  Motion for Protective Order

Defendant moves for a protective order to address the inadvertently disclosed e-mails. Motion for Protective Order at 1. The parties agree the disclosure was inadvertent; however, Plaintiff contends any privilege attached to the e-mails has been waived. The Court has reviewed the inadvertently disclosed e-mails in camera and concludes they are indeed attorney-client privileged. Furthermore, for the reasons stated in Part III.A.2, supra, the privilege has not been waived. The added reason advanced by Plaintiff for the

---

[8] The Court has reviewed Plaintiff's Notice of Supplemental Evidence, in which Plaintiff asserts, without explanation, that the attached "sworn answers to interrogatories . . . bear directly on LabCorp's representations as to its intent in pleading its two good faith and lawful affirmative defenses at issue in Plaintiff's Motion to Compel." Such answers do not change the Court's conclusion that Defendant has not waived the attorney-client privilege or work-product protection.

waiver–that Defendant has taken inconsistent positions with regard to the steps taken and the ultimate decision to terminate Plaintiff–does not change the result.  If Defendant has indeed taken inconsistent positions, such inconsistencies may well be relevant to the ultimate outcome of this matter; however, as long as Defendant is not asserting "reliance on the advice of counsel" as a basis for its actions, the content of the consultations with counsel remains privileged.

Disclosure of a communication covered by the attorney-client privilege "does not operate as a waiver in a Federal or State proceeding if: (1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)." Fed. R. Evid. 502(b).  A five factor test is generally applied to determine whether the inadvertent disclosure waives the attorney-client privilege. See, e.g., Ray v. Cutter Labs., Division of Miles, Inc., 746 F. Supp. 86, 87-88 (M.D. Fla. 1990).  The factors are "(1) the reasonableness of the precautions to prevent inadvertent disclosure; (2) the time taken to rectify the error; (3) the scope of the discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness." Id. at 88 (citing Hartford Fire Ins. Co. v. Garvey, 109 F.R.D. 323, 332 (N.D. Cal. 1985)). Considering the five factors, the Court finds that there were reasonable precautions taken by Defendant to prevent inadvertent disclosure; the time taken to rectify the error was reasonable; the scope of discovery has been broad for this type of case; and the extent of the disclosure was minimal.  In fairness, the inadvertently disclosed e-mails ought to be

returned to Defendant. Therefore, Defendant's Motion for Protective Order is due to be granted.

In accordance with the foregoing, it is

**ORDERED:**

1.  Plaintiff's Motion to Compel Discovery (Doc. No. 280) is **DENIED**.

2.  Defendant Laboratory Corporation of America, Inc.'s Motion for a Protective Order Regarding Inadvertently Disclosed Privileged Materials and Supporting Memorandum (Doc. No. 165) is **GRANTED:**

    A.  No later than **December 10, 2010**, Plaintiff shall return to Defendant documents numbered LAB-BN-00293-000301, and she shall provide written assurance to Defendant that the documents and the contents thereof have not been, and will not be, disclosed to anyone.

    B.  By the same date, any notes or other work product, including computer files, containing any information reflecting the contents of the documents identified above shall be destroyed by Plaintiff. Plaintiff shall not use the information obtained from the documents.

**DONE AND ORDERED** at Jacksonville, Florida on December 2, 2010.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record